## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

LINDSEY JULY,
an individual,

          Case No.:

     Plaintiff,

v.

PENNSYLVANIA HIGHER
EDUCATION ASSISTANCE
AGENCY, INC.,
d/b/a AMERICAN EDUCATION
SERVICES,
a foreign not for profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

     Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, LINDSEY JULY (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, INC., d/b/a AMERICAN EDUCATION SERVICES (hereinafter, "AES") EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

1

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for AES's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein AES improperly credit-reported and improperly verified its credit reporting of a student loan account (hereinafter, the "Account") on Plaintiff's consumer credit reports and in Plaintiff's consumer credit files as maintained by Equifax and Experian.  More specifically, despite Plaintiff having all of her student loans—including the Account—discharged pursuant to her Total and Permanent Disability discharge application being granted, Defendants subsequently reported the Account with a balance due and past due and included delinquent payment history resulting in the Account being reported as a negative, adverse, and/or derogatory tradeline Account on Plaintiff's Equifax and Experian reports and damaging Plaintiff's credit scores and credit reputation.

2.     Despite Plaintiff repeatedly advising AES of its errors and repeatedly disputing AES's reporting of such erroneous information directly to AES, Equifax, and Experian, AES *continued* to report the Account with negative information in violation of the FCRA.

3.     Furthermore, this is an action for damages for Equifax's and Experian's violations of the FCRA wherein Equifax and Experian continued to incorrectly report the Account with negative information after Plaintiff repeatedly disputed to Equifax and Experian wherein Plaintiff advised Equifax and Experian that such reporting was false and inaccurate.

4.     Finally, this is an action brought by an individual consumer for damages for AES's violations of the Florida Consumer Collection Practices Act ("FCCPA") wherein AES improperly attempted to collect an alleged balance owed on the Account after it had been discharged pursuant to Plaintiff's Total and Permanent Disability discharge application being granted.  More specifically, despite Plaintiff repeatedly advising AES that she did not owe a balance on the Account because all of her student loans had been discharged, AES *continued* to demand payment from Plaintiff on the alleged debt.

## JURISDICTION, VENUE & PARTIES

5.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*, and supplemental jurisdiction exists permitting Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

6.     Defendants are subject to the jurisdiction of this Court, as Defendants each regularly transact business in this District.

7.     Venue is proper in this District as Defendants each regularly conduct business in this District, and the acts and transactions described herein occur in this District.

8.     At all material times herein, Plaintiff is a natural person residing in Citrus County, Florida.

9.     At all material times herein, AES is not for profit corporation existing under the laws of the state of Pennsylvania with its principal place of business located

at 1200 N 7th Street, Harrisburg, Pennsylvania 17102-1419.

10.    At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

11.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCCPA STATUTORY STRUCTURE

12.    The FCCPA is a state consumer protection statute, modeled after the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (hereinafter, "FDCPA"), a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

13.    The FCCPA and FDCPA impose civil liability on any creditor/person as well as any debt collector, and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

14.    Specifically, the FCCPA and FDCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

15.    For example, the FCCPA prohibits a person from attempting to collect

4

by communicating with a consumer in a manner reasonably expected to abuse or harass a consumer or by communicating in an attempt to collect a debt that is known to be illegitimate or by asserting a legal right that does not exist.  See Fla. Stat. §§ 559.72(7) and (9).

## FCRA STATUTORY STRUCTURE

16.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

17.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

18.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

19.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the

consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

20.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

21.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

22.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and

for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

23.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

## GENERAL ALLEGATIONS

24.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

25.     At all material times herein, AES, itself and through its subsidiaries, regularly services student loans owed or allegedly owed by consumers residing in Citrus County, Florida.

26.     At all material times herein, AES is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

27.     At all material times herein, AES is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

28.     At all material times herein, AES attempts to collect an alleged consumer debt from Plaintiff, specifically, an alleged balance owed on a student loan account identified by account number ending -2501 and/or -0002 (the "Alleged Debt").

29.     At all material times herein, AES furnishes information to the credit reporting agencies concerning a student loan account referenced by account number ending 2501- and/or -0002 (the "Account").

30.     At all material times herein, Plaintiff's student loans were discharged under the previous servicer, Nelnet.

31.     Notwithstanding Plaintiff's full discharge under the previous servicer, the Account was subsequently transferred to AES, and AES reported the Account as open with an amount remaining due.

32.     At all material times herein, AES furnishes incorrect and/or incomplete information concerning the Account to Equifax and Experian—continuing after Plaintiff's repeated disputes—despite AES knowing that Plaintiff's student loans were fully discharged and therefore AES could not attempt to collect the Alleged Debt and should never have reported the Account to Equifax, Experian, or Trans Union.

33.     AES furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

34.     At all material times herein, Equifax and Experian are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing

consumer reports.  Equifax and Experian each disburse such consumer reports to third parties under contract for monetary compensation.

35.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

36.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### PLAINTIFF'S STUDENT LOAN DISCHARGE

37.    During or about August 2022, Plaintiff was granted total disability from the United States Social Security Administration.

38.    Prior to April 13, 2023, Plaintiff's submitted a Total and Permanent Disability discharge application, requesting discharge of three (3) remaining federal student loans, including the Account.

39.    At the time Plaintiff submitted the request to discharge her three (3) remaining federal student loan accounts, the Account at issue was serviced by Nelnet.

40.    On or about April 13, 2023, Nelnet, as agent for the U.S. Department of Education acknowledged receipt of Plaintiff's Total and Permanent Disability discharge application.

41.    On or about May 9, 2023, Plaintiff was advised by Nelnet, as agent for

the U.S. Department of Education, that all Plaintiff's remaining federal student loans—including the Account—were discharged due to Plaintiff's status as totally and permanently disabled.

42.     As such, as of May 2023, Plaintiff no longer owed a balance on the Account.

43.     Therefore, the Account was never, and could never be, validly transferred to AES/PHEAA.

## ALLEGATIONS IN SUPPORT OF
## FCCPA CLAIMS AGAINST AES

44.     On or about July 28, 2023, AES sent a letter to Plaintiff in its attempt to collect the Alleged Debt, asserting a balance of $439.54. Please see attached true and correct copies of AES's debt communications labeled as **Composite Exhibit "A."**

45.     Prior to sending its repeated debt collection communication, AES possessed knowledge that Plaintiff received a total discharge of her student loans—including the Account—and therefore, AES knew that Plaintiff no longer owed a balance on the Account as of May 2023.

46.     More specifically, AES received repeated notice from Plaintiff that she had been granted a full discharge of her student loans and therefore did not owe any further monies on the Account.

47.     Despite possessing such knowledge, AES continued to communicate with Plaintiff wherein AES demanded payment from Plaintiff on the Alleged Debt.

48.     On or about August 6, 2023, AES sent a monthly billing statement to

Plaintiff in its attempt to collect the Alleged Debt, asserting a balance of $425.81 and demanding a minimum payment of $50. *See* Ex. A.

49.     On or about September 6, 2023, AES sent a monthly billing statement to Plaintiff in its attempt to collect the Alleged Debt, asserting a balance of $425.81 and demanding a minimum payment of $100. *See* Ex. A.

50.     On or about September 11, 2023, AES sent a collection letter to Plaintiff in its attempt to collect the Alleged Debt, asserting a delinquency of 14 days, a balance past due of $53, and including a late fee. *See* Ex. A.

51.     On or about October 6, 2023, AES sent a monthly billing statement to Plaintiff in its attempt to collect the Alleged Debt, asserting a balance of $425.75, demanding a minimum payment of $153, and including a late fee. *See* Ex. A.

52.     On or about October 26, 2023, AES sent a late notice to Plaintiff in its attempt to collect the Alleged Debt, asserting a delinquency of 59 days, a balance past due of $106, and including a late fee. *See* Ex. A.

53.     On or about November 6, 2023, AES sent a monthly billing statement to Plaintiff in its attempt to collect the Alleged Debt, asserting a balance of $425.75, demanding a minimum payment of $206, and including late fees. *See* Ex. A.

54.     On or about November 20, 2023, AES placed a call directly to Plaintiff in its attempt to collect the Alleged Debt. *See* Ex. A.

55.     On or about December 21, 2023, AES placed a call directly to Plaintiff in its attempt to collect the Alleged Debt. *See* Ex. A.

56.     On or about December 26, 2023, AES sent a collection notice to Plaintiff in its attempt to collect the Alleged Debt, asserting a delinquency of 59 days, a balance past due of $106, and including a late fee. *See* Ex. A.

57.     Further, on or about February 17, 2024, AES sent a letter to Plaintiff wherein AES identified Plaintiff as a "BORROWER," stated "[w]e are the holder of one or more of your student loans," and AES's letter was sent from the "Default Collections Department."

58.     Each of the above-referenced letters, billing statements, and phone calls constitute a "communication" made in AES's attempts to collect the Alleged Debt from Plaintiff.

59.     AES's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state law.

60.     Given AES's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

61.     Plaintiff needs and is entitled to injunctive relief with respect to AES's debt collection communications in violation of the FCCPA.

62.     AES's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite receiving a total discharge of her student loans including the Account, AES could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

## PLAINTIFF'S DISPUTES

63.     Prior to November 2023, Plaintiff frequently applied for loans with Uplift, Inc. and was approved each time.

64.     On or about November 16, 2023, Plaintiff again applied for a loan with Uplift, Inc.  However, this time, Uplift, Inc. denied Plaintiff's loan application due to derogatory information included on Plaintiff's Equifax credit report.

65.     On or about November 16, 2023, Plaintiff obtained copies of her credit reports as maintained by Equifax, Experian, and Trans Union.

66.     Despite all Plaintiff's federal student loans, including the Account, being discharged pursuant to the granting of Plaintiff's Total and Permanent Disability discharge application, AES, Equifax, Experian, and Trans Union each reported the Account with an alleged balance of $440.00 and with delinquent payment history.

67.     Importantly, the Account was the only derogatory or negative account appearing on Plaintiff's Experian credit reports as of November 2023.

68.     Additionally, on Plaintiff's Experian credit report, Experian reported two (2) social security numbers that did not belong to Plaintiff.

69.     Such social security numbers were false, inaccurate, and materially misleading because they did not belong to Plaintiff.

70.     Experian generated and published credit reports to Plaintiff's creditors and/or potential lenders including the wrong social security number information.

71.     In November 2023, Plaintiff disputed AES's and Experian's reporting of the Account to Experian, via Experian's online portal (hereinafter, "First Dispute").

72.     Experian communicated Plaintiff's First Dispute to AES.

73.     AES received Plaintiff's First Dispute from Experian.

74.     In response to Plaintiff's First Dispute, Experian and AES purportedly verified their reporting of the Account, continued to report the Account as open with a past-due balance, and reported the Account as sixty (60) days late.

75.     On or about December 8, 2023, Plaintiff sent a letter to Equifax, Experian, and Trans Union, disputing AES's reporting of the Account, wherein Plaintiff advised that the Account had been discharged prior to being purportedly transferred to AES, requested that Experian remove the erroneous social security numbers, and demanded that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, "Plaintiff's Second Dispute"). Please see attached a true and correct copy of Plaintiff's Second Dispute labeled as **Exhibit "B."**

76.     Equifax, Experian, and Trans Union received Plaintiff's Second Dispute.

77.     Equifax communicated Plaintiff's Second Dispute to AES.

78.     Experian communicated Plaintiff's Second Dispute to AES.

79.     Trans Union communicated Plaintiff's Second Dispute to AES.

80.     AES received Plaintiff's Second Dispute from Equifax, Experian, and Trans Union.

81.     On or about December 12, 2023, Trans Union sent a letter to Plaintiff in response to Plaintiff's Second Dispute advising Plaintiff that Trans Union deleted its reporting of the Account. Please see attached a true and correct copy of the relevant pages of said letter labeled as **Exhibit "C."**

82.     On or about December 15, 2023, Experian sent a letter to Plaintiff in response to Plaintiff's Second Dispute.  Please see attached a true and correct copy of the relevant pages of said letter labeled as **Exhibit "D."**

83.     Following Plaintiff's Second Dispute, Experian and AES updated their reporting of the Account to reflect a $0 balance owed as of November 2023.

84.     However, despite Trans Union wholly deleting its reporting of the Account in response to Plaintiff's Second Dispute, Experian and AES continued to report the Account as a closed account belonging to Plaintiff, continued to report a balance due in the monthly payment history for the months of September 2023 and October 2023, and also reported an "actual payment amount" of $0 for September 2023, leading a user to believe that a balance was owed in September 2023 but not paid.

85.     Experian's and AES's immediately-aforementioned reporting of the Account is false, inaccurate, and materially misleading because the underlying debt owed on the Account was discharged well before AES allegedly obtained the Alleged Debt/Account for purported servicing.

86.     On or about December 16, 2023, Equifax sent a letter to Plaintiff in response to Plaintiff's Second Dispute. Please see attached a true and correct copy of the relevant pages of said letter labeled as **Exhibit "E."**

87.     Following Plaintiff's Second Dispute, Equifax and AES updated their reporting of the Account to reflect a $0 balance owed as of November 2023.

88.     However, despite Trans Union wholly deleting its reporting of the

Account in response to Plaintiff's Second Dispute, Equifax and AES continued to report the Account as a closed account belonging to Plaintiff, and continued to report a balance due and past-due in the monthly payment history for the months of September 2023, October 2023, and November 2023 with no corresponding actual payment amount, leading a user to believe that a balance was owed from September 2023 to November 2032 but was not paid.

89.     Equifax's and AES's immediately-aforementioned reporting of the Account is false, inaccurate, and materially misleading because the underlying debt owed on the Account was discharged well before AES allegedly obtained the Alleged Debt/Account for purported servicing.

90.     On or about January 5, 2024, Plaintiff sent *another* letter to Equifax and Experian, *again* disputing the credit reporting of the Account, and *again* demanding that Equifax and Experian investigate and update accordingly (hereinafter, "Plaintiff's Third Dispute"). Please see attached a true and correct copy of the relevant pages of Plaintiff's Third Dispute labeled as **Exhibit "F."**

91.     More specifically, Plaintiff's Third Dispute advised Equifax and Experian that because the Account was discharged during its servicing under Nelnet, there should be no account for transfer to AES and the Account must be deleted.

92.     Equifax and Experian received Plaintiff's Third Dispute.

93.     Equifax communicated Plaintiff's Third Dispute to AES.

94.     Experian communicated Plaintiff's Third Written Dispute to AES.

95.     On or about January 11, 2024, Equifax sent a letter to Plaintiff in

response to Plaintiff's Third Dispute, purportedly verifying its reporting of the Account. Please see attached a true and correct copy of said letter labeled as **Exhibit "G."**

96.     More specifically, despite Plaintiff's repeated disputes, Equifax and AES *still* reported the Account as a closed account belonging to Plaintiff, and *still* reported a balance due and past-due in the monthly payment history for the months of September 2023, October 2023, and November 2023 with no corresponding actual payment amount, leading a user to believe that a balance was owed from September 2023 to November 2032 but was not paid.

97.     Equifax's and AES's immediately-aforementioned reporting of the Account is false, inaccurate, and materially misleading because the underlying debt owed on the Account was discharged well before AES allegedly obtained the Alleged Debt/Account for purported servicing.

98.     On or about January 22, 2024, Equifax sent another, nearly identical letter to Plaintiff in response to Plaintiff's Third Dispute, again showing the same information communicated to Plaintiff in Equifax's response dated January 11, 2024. Please see attached a true and correct copy of said letter labeled as **Exhibit "H."**

99.     Following Plaintiff's First Dispute, Experian generated and published Plaintiff's Experian credit report—containing false, inaccurate, and materially misleading information with respect to the Account—to Plaintiff's lender and potential creditors.

100. Following Plaintiff's Second Dispute, Equifax generated and published Plaintiff's Equifax credit report—containing false, inaccurate, and materially misleading information with respect to the Account—to Plaintiff's lender and potential creditors.

## DAMAGES

101. As a result of Defendants' unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

102. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct.

103. Plaintiff retained Swift Law PLLC and Bannon Law Group for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

104. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

105. As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued

reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account as existing payment obligations with balances due and past due resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

106.   Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite receiving a full discharge of her student loans including the Account and despite Plaintiff repeatedly advising Defendants of the same, Plaintiff must simply endure Defendants' unlawful reporting of the Account.

## COUNT ONE
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)
### (as to AES)

Plaintiff re-alleges paragraphs one (1) through one hundred six (106) as if fully restated herein and further states as follows:

107.   AES is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax and Experian correct the Account on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

108.   As described above, Plaintiff received a total discharge of her student loans including the Account.

109.   Despite Plaintiff receiving a total discharge on the Account prior to the Account being allegedly transferred to AES, AES reported the Account including with a balance remaining owed and past due from Plaintiff.

110.   Between November 2023 and January 2024, AES received notice of Plaintiff's disputes from Equifax, Experian, and Trans Union.

111.   Following Plaintiff's First Dispute, AES confirmed and/or verified its reporting to Experian, and continued reporting the Account as an open payment obligation with a balance remaining due and past due.

112.   As of May 2023, Plaintiff no longer owed a balance on the Account.

113.   As such, it is inaccurate and/or materially misleading to report any balance remaining due or past due on the Account.

114.   Further, AES should not have reported the Account at all because any personal liability on the Account was discharged prior to the Account being sent to AES.

115.   Following Plaintiff's Second and Third Disputes—and despite Trans Union deleting its reporting of the Account after receiving Plaintiff's Second Dispute— AES not only continued to report a tradeline for the Account but also *still* reported a balance due for the months of September 2023, October 2023, and/or November 2023 with no corresponding actual payment amount, leading a user to believe that a balance was owed from September 2023 to November 2032 but was not paid.

116.   AES's refusal to request that Equifax and Experian correct their reporting of the tradeline associated with the Account was intentionally, willfully, and knowingly done as AES clearly possessed knowledge of the discharge of the Account.

117.   AES's re-investigations were not conducted in good faith.

118.   AES's re-investigations were not conducted reasonably.

119.   AES's re-investigations were not conducted using all information reasonably available to AES.

120.   As a result of AES's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of AES's derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with a balance due and past due resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

121.   AES's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

122.   AES's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or

1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(as to Equifax and Experian)**

Plaintiff re-alleges paragraphs one (1) through one hundred six (106) as if fully restated herein and further states as follows:

123.     Equifax and Experian are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

124.     Equifax and Experian each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

125.     Specifically, despite Plaintiff receiving a discharge on the Account no later than May 2023, and despite Plaintiff's repeated disputes advising Equifax and Experian of the same, Equifax and Experian continued to unlawfully report the Account as an existing payment obligation with an amount remaining due and past due resulting in the Account being reported as a derogatory, negative, or adverse account.

126.    More specifically, following Plaintiff's First Dispute, Experian purportedly verified its reporting of the Account and continued to report the Account as an outstanding and past-due payment obligation owed by Plaintiff personally.

22

127. Additionally, following Plaintiff's Second and Third Dispute, both Equifax and Experian not only continued to report a tradeline for the Account but *still* reported a balance due for the months of September 2023, October 2023, and/or November 2023 with no corresponding actual payment amount, leading a user to believe that a balance was owed from September 2023 to November 2032 but was not paid.

128. Following Plaintiff's First Dispute, Experian generated and published Plaintiff's Experian credit report—containing false, inaccurate, and materially misleading information with respect to the Account—to Plaintiff's lender and potential creditors.

129. Following Plaintiff's Second Dispute, Equifax generated and published Plaintiff's Equifax credit report—containing false, inaccurate, and materially misleading information with respect to the Account—to Plaintiff's lender and potential creditors.

130. Furthermore, on Plaintiff's Experian credit report, Experian reported two (2) social security numbers that did not belong to Plaintiff.

131. Such social security numbers were false, inaccurate, and materially misleading because they did not belong to Plaintiff.

132. Experian generated and published credit reports to Plaintiff's creditors and/or potential lenders including the wrong social security number information.

133. Such reporting of the Account and the erroneous social security numbers is false and evidences Experian's failure to establish or follow reasonable procedures

to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

134.   Similarly, Equifax's reporting of the Account as owed by Plaintiff between September 2023 and November 2023 is false and evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

135.   Overall, Equifax and Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax and Experian credit reports and credit file.

136.   As a result of Equifax's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with a balance due and past due resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

137.   Equifax's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

138.   Equifax's and Experian's violations of 15 United States Code Section

1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT THREE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE
## SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)
### (as to Equifax and Experian)

Plaintiff re-alleges paragraphs one (1) through one hundred six (106) as if fully restated herein and further states as follows:

139.    Equifax and Experian are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (3) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (4) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

140.    Specifically, Equifax and Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

141.    Despite Plaintiff receiving a discharge on the Account no later than May 2023 and despite Plaintiff's repeated disputes advising Equifax and Experian of the

same, Equifax and Experian continued to unlawfully report the Account as an existing payment obligation with an amount remaining due and past due resulting in the Account being reported as a derogatory, negative, or adverse account.

142.    More specifically, following Plaintiff's First Dispute, Experian purportedly verified its reporting of the Account and continued to report the Account as an outstanding and past-due payment obligation owed by Plaintiff personally.

143.    Additionally, following Plaintiff's Second and Third Dispute, both Equifax and Experian not only continued to report a tradeline for the Account but *still* reported a balance due for the months of September 2023, October 2023, and/or November 2023 with no corresponding actual payment amount, leading a user to believe that a balance was owed from September 2023 to November 2032 but was not paid.

144.    Equifax and Experian did not request any documents from AES corroborating information furnished and/or verified by Equifax and Experian regarding Plaintiff and the Account in response to any of Plaintiff's disputes.

145.    Equifax and Experian's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

146.    Despite receiving Plaintiff's repeated disputes, each of which explained that Plaintiff had received a full discharge regarding the Account prior to the Account being sent to AES, allowing Equifax and Experian to determine that the Account must be deleted from Plaintiff's credit reports and credit file, Equifax and Experian *continued* to report the Account with an erroneous balance remaining due and past due.

147.    As such, Equifax and Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax and Experian failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

148.    Such reporting is false and evidences Equifax and Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

149.    Equifax and Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

150.    Equifax and Experian's reinvestigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by AES.

151.    Equifax and Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

152.    Equifax and Experian's reinvestigation procedures are unreasonable.

153.    Equifax and Experian's re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax and Experian.

154.    Equifax and Experian's reinvestigations were *per se* deficient by reason of these failures in Equifax and Experian's reinvestigations of Plaintiff's disputes and the Account.

155.    As a result of Equifax and Experian's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making additional credit applications as she believed she would not be able to

obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline accounts.

156.    Equifax and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

157.    Equifax and Experian's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)**

Plaintiff re-alleges paragraphs one (1) through one hundred six (106) as if fully restated herein and further states as follows:

130.    AES is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debt despite AES possessing knowledge

28

that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that AES knows does not exist.

131.   Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because Plaintiff received a total discharge of her student loans including the Account under the previous servicer Nelnet and as such, Plaintiff never held an open student loan account with AES.

132.   Prior to sending its repeated debt collection communication, AES possessed knowledge that Plaintiff received a total discharge of her student loans—including the Account—and therefore, AES knew that Plaintiff no longer owed a balance on the Account as of May 2023.

133.   More specifically, AES received repeated notice from Plaintiff that she had been granted a full discharge of her student loans and therefore did not owe any further monies on the Account.

134.   Despite possessing such knowledge, AES continued to communicate with Plaintiff wherein AES demanded payment from Plaintiff on the Alleged Debt.

135.   More specifically, despite possessing knowledge that the Alleged Debt was not legitimately incurred by Plaintiff and therefore not legitimately owed by Plaintiff, AES sent billing statements to Plaintiff, sent collection letters to Plaintiff, and placed telephone calls to Plaintiff demanding payment on the Alleged Debt.

136.   As such, AES attempted to collect the Alleged Debt—an amount known to be illegitimate—and asserted a legal right that does not exist in its communications made in an attempt to collect the Alleged Debt from Plaintiff.

137.    Despite Plaintiff's exhaustive efforts advising AES that the Alleged Debt was discharged, AES continued to communicate with Plaintiff in an attempt to collect the Alleged Debt.

138.    AES's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite receiving a total discharge of her student loans including the Account, AES could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

139.    As a result of AES's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to AES that she did not owe a balance due to receiving a total discharge of her student loans including the Account, Plaintiff must simply endure AES's ongoing and invasive debt collection communications.

140.    AES's willful violation of, inter alia, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

141.    As a direct and proximate result of AES's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.      Judgment against AES, Equifax, and Experian for maximum statutory damages for violations of the FCRA;

b.      Judgment declaring that AES violated the FCCPA;

c.      Judgment enjoining AES from engaging in further conduct in violation of the FCCPA;

d.      Judgment against AES for maximum statutory damages under the FCCPA;

e.      Actual damages in an amount to be determined at trial;

f.      Compensatory damages in an amount to be determined at trial;

g.      Punitive damages in an amount to be determined at trial;

h.      An award of attorney's fees and costs; and

i.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487

Sean E. McEleney, Esq., FBN 125561
11300 4th Street North, Suite 260
St. Petersburg, FL  33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
*Co-Counsel for Plaintiff*

**Bannon Law Group**

*/s/ G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 0105718**
1901 Dr. M.L. King Jr. Street N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jessica@rbannonlaw.com
*Co-counsel for Plaintiff*